UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| HODA K. DANNAOUI,<br><br>Plaintiff,<br><br>v.<br><br>HBF APU, II, LLC,<br><br>Defendant. | Case No. 25-10791<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [12]**

Hoda Dannaoui worked as a cook for seven months at the Cat Cora Taproom in Detroit Metropolitan Airport. (ECF No. 17, PageID.677.) During that time, Dannaoui says she experienced harassment, discrimination, and retaliation. (*See generally id.*; ECF No. 1, PageID.6–14.) So she filed suit in Michigan state court against the company that operated Cat Cora Taproom, HBF APU, II, LLC (HBF). (*Id.*; ECF No. 12, PageID.98.) HBF timely removed the case. (ECF No. 1, PageID.1–3.)

Dannaoui asserts claims for constructive/retaliatory discharge in violation of Title VII (Count I), violation of the Elliot-Larsen Civil Rights Act (ELCRA) (Count II),[1] discrimination on the basis of sex, religion, and national origin under ELCRA

[1] Dannaoui does not identify which claims she brings under ELCRA. (*See* ECF No. 1, PageID.11–12.) Based on her pleading and response brief (ECF No. 17, PageID.689–690), the Court construes them to be discrimination and hostile work environment.

(Count III), and intentional infliction of emotional distress under Michigan law (Count IV). (*Id.* at PageID.6–14.)

HBF moves for summary judgment. (ECF No. 12.) The motion is fully and adequately briefed (ECF Nos. 12, 17, 20), so the Court decides it without additional argument. E.D. Mich. LR 7.1(f)(2). For the reasons that follow, the motion is GRANTED.

**I.**

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is proper where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Mutchler v. Dunlap Mem'l Hosp.*, 485 F.3d 854, 857 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(a)). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphases in original). A dispute is "genuine" if the evidence permits a reasonable fact-finder to return a verdict in favor of the nonmovant, and a fact is "material" if it may affect the outcome of the suit. *See Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021). Importantly, a party opposing a

properly supported motion for summary judgment "may not rest upon the mere allegations or denials of h[er] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.3 (1986) (quoting Fed. R. Civ. P. 56(e)).

**II.**

**A.**

As a threshold matter, Dannaoui's response does not include complete citations to the record. (ECF No. 17, PageID.681–682 (listing "pin cite" placeholders).) That matters. In deciding a summary judgment motion, district courts "need consider only the cited materials." Fed R. Civ. P. 56(c)(3). "While a district court *can* look around for other evidence in the record, nothing requires it to. 'Judges are not like pigs, hunting for truffles buried in the record.'" *HBKY, LLC v. Elk River Exp., LLC*, 150 F.4th 480, 488 (6th Cir. 2025) (citation omitted); *see also Cummerlander v. Patriot Preparatory Acad. Inc.*, 86 F. Supp. 3d 808, 814 (S.D. Ohio 2015) ("The court reviewing a summary judgment motion need not search the record in an effort to establish the lack of genuinely disputed material facts.") (citing *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992)).

**B.**

Now to the facts that were cited. Dannaoui started at the Cat Cora Taproom in April 2023, where she was the only Muslim American employed. (ECF No. 17, PageID.677.) Issues quickly arose. Just two months after she started, says Dannaoui, a supervisor "made repeated sexually explicit comments toward her." (*Id.*) The next

month, Dannaoui reported "unsafe food-safety conditions, including maggots in the kitchen." (*Id.*) Bullying, including name-calling, followed. (*Id.* at PageID.677–688.) As did the request that she perform tasks beyond what she was medically cleared to do. (*Id.* at PageID.677.)

Then in September 2023, Dannaoui says that same supervisor "sexually assaulted her by grabbing her waist and pressing his body against hers without consent." (*Id.* at PageID.677–678.) That same day, Dannaoui maintains this supervisor stated to her and others: "the first time I did it, it felt so good." (*Id.* at PageID.678.) Dannaoui maintains she was subjected to harassment the following month "based on her Muslim faith and Lebanese national origin." (*Id.*)

Dannaoui "repeatedly complained to supervisors and Human Resources [and] submitted multiple written complaints" and "requested accommodations, protective measures, or transfer." (*Id.*) HBF did not sit idly by. Instead, it thoroughly investigated Dannaoui's complaints. (ECF No. 12, PageID.102–104, 107 ("HBF conducted a thorough investigation of [Dannaoui's] allegations, which included reviewing hours of video footage of the kitchen and interviewing 8 employees.") (citing complaint, witness statements, investigation summary report, and video footage).)

Dannaoui's employment ended in November 2023 when she was "directed[,]" but refused, to come back to work, so HBF "requested the return of her badge." (ECF No. 17, PageID.678–679.) Dannaoui sought "medical treatment for work-related injuries and for stress resulting from ongoing harassment, discrimination, sexual

harassment, and sexual assault." (*Id.* at PageID.678 (citing exhibits to response, including Dannaoui's affidavit, her medical records, and her "protest letter").)

**III.**

**A.**

Before turning to Dannaoui's claims, the Court addresses a threshold matter regarding her claim(s) under Title VII. "Parties alleging violations of Title VII must first exhaust administrative remedies by filing a charge with the [Equal Opportunity Employment Commission] (EEOC)." *Russell v. Three Pillars*, No. 21-1481, 2022 WL 351770, at *4 (6th Cir. Feb. 7, 2022) (citing 42 U.S.C. § 2000e-5(e)(1) and *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 731 (6th Cir. 2006)). But the record does not reflect any charge filed with, or a right-to-sue letter received from, the EEOC. HBF, however, does not raise this issue. Because "the question of administrative exhaustion [under Title VII] is nonjurisdictional," HBF has "forfeited the argument that [Dannaoui] did not exhaust" her claims under Title VII. *Adamov v. U.S. Bank Nat. Ass'n*, 726 F.3d 851, 856 (6th Cir. 2013). Thus, the Court will follow the parties' lead and not address the matter further.

**B.**

The Court starts with Dannaoui's first claim, retaliatory/constructive discharge under Title VII. Unlike her complaint, which only brings this claim under Title VII (ECF No. 1, PageID.9–11), Dannaoui's response purports to do so under both Title VII and ELCRA (ECF No. 17, PageID.691). That makes no difference, however, because "[c]laims of retaliation under the ELCRA are analyzed in the same manner as claims for retaliation under Title VII." *Johnson v. Farmington Pub. Schs.*, 728 F.

Supp. 3d 723, 750–51 (E.D. Mich. 2024). To establish a prima facie case of retaliation, Dannaoui must show that: "(1) [s]he engaged in activity protected by Title VII [and ELCRA]; (2) h[er] exercise of such protected activity was known by [HBF]; (3) thereafter, [HBF] took an action that was 'materially adverse' to [her]; and (4) a causal connection existed between the protected activity and the materially adverse action." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (citation omitted). The parties do not dispute that Dannaoui complained about harassment and that HBF was aware of her complaints. They dispute whether she was constructively discharged as a result of those complaints.

While mislabeled a claim, "constructive discharge is merely one of the adverse employment actions that [Dannaoui] claims to have suffered." *Lockhart v. Vill. of Woodmere*, No. 07-2517, 2008 WL 4925817, at *1 (N.D. Ohio Nov. 14, 2008). "A constructive discharge occurs when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Laster,* 746 F.3d at 727 (citations and internal quotation marks omitted). "To demonstrate a constructive discharge, [Dannaoui] must adduce evidence to show that 1) [HBF] deliberately created intolerable working conditions, as perceived by a reasonable person, and 2) [HBF] did so with the intention of forcing [her] to quit." *Id.* (citations omitted). Dannaoui does neither. Her medical records show that she resigned not because of "intolerable working conditions" but because her "stress level was high" (ECF No. 17-2, PageID.697) and "she was treated 'unfairly.'" (ECF No. 17-7, PageID.715). *See Downs*

*v. Collins*, No. 25-5115, 2026 WL 2365343, at *2 (6th Cir. July 6, 2026) ("Downs's constructive-discharge claims similarly fail, because he did not arguably show that he faced 'working conditions that a reasonable person would perceive as intolerable.'") (quoting *Cooper v. Dolgencorp, LLC*, 93 F.4th 360, 373 (6th Cir. 2024)). Even if the stress and unfairness Dannaoui complains of *could* reach the high threshold of "intolerable," the record does not show HBF "*deliberately* created intolerable working conditions with the *intention* of forcing [her] to quit." *Laster*, 746 F.3d at 728 (emphases in original). "In ascertaining the employer's intent, the court may consider whether it was reasonably foreseeable that the harassment and the employer's handling of it would cause the employee to resign." *Collette v. Stein-Mart, Inc.*, 126 F. App'x 678, 682 (6th Cir. 2005) (citation omitted). That is not what the record shows. After conducting its investigation, HBF contacted Dannaoui and advised her that her claims could not be substantiated. (ECF Nos. 12-29, 12-32.) They invited her to provide more supporting information and requested her to come *back* to work. (*See, e.g.*, ECF No. 12-32, PageID.644 ("If there are additional facts that you did not share with us regarding the work environment, provide those to us immediately so that we may investigate . . . . [s]subsequently, we will expect you to report to work on Wednesday, November 8, 2023").) That is not evidence of an "intention of forcing [her] to quit." *Laster*, 746 F.3d at 728. Thus, no reasonable jury could find that HBF purposely created a work environment so severe as to intend Dannaoui to quit. As a result, she fails to meet the constructive discharge element of her retaliation claim, warranting summary judgment in HBF's favor.

**C.**

Next, the Court turns to Dannaoui's claim of discrimination on the basis of sex, religion, and national original under ELCRA. (ECF No. 1, PageID.12–13.) HBF advanced several arguments for summary judgment on this claim. (ECF No. 12, PageID.113–115.) Yet Dannaoui responds to none of them. (*See generally* ECF No. 17 (advancing arguments on IIED, hostile work environment, and retaliatory discharge claims, but none for discrimination).) This matters. The Sixth Circuit's "jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when [she] fails to address it in response to a motion for summary judgment." *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (collecting cases); *see also Notredan, L.L.C. v. Old Republic Exchange Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. July 29, 2013) (failure to address an argument in response to a dispositive motion "amounts to a forfeiture" of the claim to which the unaddressed arguments were directed) (citing *Allstate Ins. Co. v. Global Medical Billing, Inc.,* 520 Fed. App'x 409, 412–13 (6th Cir. 2013)). Thus, because Dannaoui abandoned her discrimination claims and HBF has satisfied its burden by showing it took no adverse action against Dannaoui and did not treat her differently than any similarly-situated employee (ECF No. 12, PageID.113–115), summary judgment is warranted on Dannaoui's discrimination claims.

**D.**

Dannaoui also asserts hostile work environment claims. (ECF No. 1, PageID.12–13.) Similar to her retaliatory/constructive discharge claim, Dannaoui's

response purports to bring her hostile work environment claim under both Title VII and ELCRA (*id.*), while her complaint just cites ELCRA (ECF No. 1, PageID.11–12). But because "[t]he ELCRA hostile work environment analysis is identical to Title VII's analysis[,]" the Court will analyze them together. *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 468 (6th Cir. 2012).

To establish a hostile work environment claim under Title VII and ELCRA, Dannaoui must show that:

> (1) [she] is a member of a protected class; (2) [s]he was subjected to unwelcome harassment; (3) the harassment was based on h[er] sex or sexual orientation; (4) the harassment had the effect of unreasonably interfering with h[er] work performance by creating an intimidating, hostile, or offensive work environment; and (5) [HBF] knew or should have known about the harassment and failed to act.

*Thomas v. Portage Dep't of Parks & Recreation*, No. 24-1117, 2025 WL 2331041, at *2 (W.D. Mich. Aug. 13, 2025) (citations omitted). "When evaluating these claims . . . [courts] look[ ] at the totality of the alleged harassment to determine whether it was sufficiently severe or pervasive to alter the conditions of a plaintiff's employment and create an abusive working environment." *Owens v. Meijer, Inc.*, No. 24-10732, 2026 WL 1814833, at *11 (E.D. Mich. June 24, 2026) (citation omitted). "The Sixth Circuit 'has established a relatively high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory.'" *Id.* (citation omitted).

HBF contests only whether Dannaoui can satisfy the fourth ("severe or pervasive") and fifth (employer "knew or should have known") elements. (ECF No. 12, PageID.117.) The Court addresses each in turn.

Start with the fourth element which asks whether "the harassment had the effect of unreasonably interfering with [Dannaoui's] work performance by creating an intimidating, hostile, or offensive work environment." *Thomas*, 2025 WL 2331041, at *2. This "requirement 'has a subjective prong and an objective prong.'" *Rodriguez v. DTE Energy*, No. 24-11120, 2026 WL 323166, at *5 (E.D. Mich. Feb. 6, 2026) (quoting *Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 568 (6th Cir. 2021)). A claim fails where it does not meet both prongs. *See id.* (granting summary judgment where plaintiff failed to satisfy objective prong); *Nathan*, 992 F.3d at 568 (affirming summary judgment finding objective prong unsatisfied despite concluding subjective element met). The Court will assume Dannaoui meets the subjective prong and turn to whether she satisfies the objective one as well.

"In assessing whether harassment is objectively severe or pervasive, [c]ourts examine the totality of the circumstances." *Rodriguez*, 2026 WL 323166, at *5. That includes "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Nathan*, 992 F.3d at 568) (collecting cases) (internal citation marks omitted) ("Though there is no mathematical equation for when conduct becomes severe or pervasive, these cases show that even unacceptable and immoral conduct may not suffice under Title VII.").

Dannaoui says she endured "repeated sexual harassment by a supervisory employee" but the record indicates a single incident of unwanted physical contact

where a co-worker allegedly "grabb[ed] her waist and press[ed] his body against hers without consent." (ECF No. 17, PageID.677–678.) This conduct, while offensive, falls far below the "demanding test." *Rodriguez*, 2026 WL 323166, at *6 (surveying Sixth Circuit cases finding conduct "[n]ot severe or pervasive[,]" including when "a female supervisor grabbed a male employee's buttocks at a Christmas party and said that she 'controlled [his] ass and she would do whatever she wanted with it' and where, "on three other occasions, the same supervisor rubbed the employee's shoulder, put her hands on him, and told him to come back to her house for some one-on-one time in her pool.").

Dannaoui says she faced verbal comments too—being called a "terrorist," being told to "go back to Hamas[,]" and being "mock[ed] [for] her Muslim faith by chanting 'Allah.'" (ECF No. 17, PageID.680–681.) These statements, while deeply unfortunate and unbecoming of an inclusive workplace, can most accurately be described as "offensive utterance[s]." *Rodriguez*, 2026 WL 323166, at *6 (quoting *Nathan*, 992 F.3d at 568) (internal citation marks omitted); *see also Hafford v. Seidner*, 183 F.3d 506, 514 (6th Cir. 1999) (affirming summary judgment on religious-based hostile work environment claim where evidence included (1) the supervisor's accusation that [plaintiff] was preparing for a 'holy war,' (2) the meeting in which [plaintiff] alleges the warden mocked the Muslim greeting and falsely accused [plaintiff] of preaching and praying with the inmates because he permitted and responded to inmates' use of the Muslim greeting; and (3) [officer's] statements that [plaintiff's] religion taught him to hate white people").

Moreover, Dannaoui fails to establish that these actions "unreasonably interfere[d] with [her] work performance." *Thomas*, 2025 WL 2331041, at *2. Indeed, Dannaoui does not identify any work conditions that were supposedly "interfere[d]" with. (*See* ECF No. 17, PageID.689.) And she may not rely on HBF's requirement for her to complete tasks that, she maintains, went beyond her medical clearance. Those actions, Dannaoui explained, resulted from her complaints about "unsafe food-safety conditions[,]" not any protected characteristic. (*Id.* at PageID.677 ("Plaintiff testified that after making that report she was subjected to bullying and was required to perform heavy lifting and bending despite medical restrictions provided to management and Human Resources.").); *see Miller v. United States Dep't of Veterans Affairs*, No. 25-1544, 2026 WL 2150431, at *7 (6th Cir. July 27, 2026) (finding that actions "cannot support a hostile-work-environment claim" where they "d[id] not involve conduct based on a protected characteristic (race, sex, age, or disability)") (citation omitted); *Turnbow-Avery v. Tuling*, No. 23-571, 2025 WL 2051758, at *18 (S.D. Ohio July 22, 2025) ("a hostile work environment claim requires evidence that the harassment was linked to a protected characteristic").

Finally, the actions Dannaoui points to fail to show "frequency of [] discriminatory conduct." *Rodriguez*, 2026 WL 323166, at *5 (quoting *Nathan*, 992 F.3d at 568); *see Miller*, 2026 WL 2150431, at *7 ("This court, however, has consistently found comparable or even more egregious conduct to be insufficiently severe or pervasive to support a sex-based hostile-work-environment claim.") (collecting cases) (citing *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 351 (6th Cir.

2005) ("holding that 'three relatively isolated incidents' in which a supervisor 'told vulgar jokes,' 'twice placed his vibrating pager on [the plaintiff's] thigh,' and 'pulled at [the plaintiff's] overalls after she told him she was wearing a thong' were insufficiently severe or pervasive").

Thus, because no reasonable jury could find that HBF's work environment was "objectively severe or pervasive[,]" *Rodriguez*, 2026 WL 323166, at *5 (quoting *Nathan*, 992 F.3d at 568), the Court need not consider whether Dannaoui satisfies the fifth element—whether HBF "knew or should have known about the harassment and failed to act." *Thomas*, 2025 WL 2331041, at *2 (citations omitted); *see Chaney v. Haworth, Inc.*, 802 F. App'x 1006, 1010 (6th Cir. 2020) ("The district court determined that Chaney had failed to establish the fourth and fifth elements of his hostile work environment claim. We agree with the district court that Chaney has failed to establish the fifth element, and so we need not consider the fourth.").

But if it did consider that element, the Court has doubts she could satisfy it. The record reflects that "HBF conducted a thorough investigation of [Dannaoui's] allegations, which included reviewing hours of video footage of the kitchen and interviewing 8 employees." (ECF No. 12, PageID.107 (citing complaint, witness statements, investigation summary report, and video footage).) This runs counter to a showing that HBF "failed to act." *Thomas*, 2025 WL 2331041, at *2 (citations omitted); *see Chaney*, 802 F. App'x at 1010 ("The law requires an employer to take reasonably appropriate corrective action once it learns of harassment. [Defendant's] response was reasonable given the circumstances. [HR] conducted a full investigation

into the . . . incident. [HR] interviewed [Plaintiff] multiple times and spoke with several individuals about the incident."). So too here.

For these reasons, summary judgment is warranted on Dannaoui's hostile work environment claims.

**E.**

The Court ends with Dannaoui's IIED claim under Michigan law. (ECF No. 1, PageID.13.) "To establish a claim of intentional infliction of emotional distress, [Dannaoui] must prove the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Vivona v. Antony*, No. 370870, 2025 WL 2967252, at *8 (Mich. Ct. App. Oct. 17, 2025) (internal quotation marks and citation omitted). "The conduct complained of must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* (citation omitted); *McNatt v. Romulus Cmty. Sch. Dist.*, No. 25-10291, 2026 WL 962396, at *8 (E.D. Mich. Apr. 9, 2026) (quoting *Doe v. Mills*, 212 Mich. App. 73, 91 (Mich. Ct. App. 1995)).

Dannaoui says she meets this standard in two ways. First, by HBF's "fail[ure] to take prompt or effective corrective action" after she filed complaints with HR. (ECF No. 17, PageID.688.) And second, by "repeated sexually explicit and degrading comments by a supervisory employee, an incident of unwanted physical contact amounting to sexual assault, escalating religious and national-origin harassment, and an explicit threat of violence by a supervisor." (*Id.*)

Neither clear the high bar of extreme and outrageous conduct that can be considered atrocious and utterly intolerable in a civilized community. As to HBF's alleged failure to act after Dannaoui reported to HR, that "involves omission rather than acts," so it is insufficient to state an IIED claim. *Brennan v. Chippewa County War Mem'l Hosp., Inc.*, No. 315795, 2014 WL 5306621, at *10 (Mich. Ct. App. Oct. 16, 2014) ("Because this case involves omissions rather than acts, the trial court properly dismissed Brennan's individual claim for the intentional infliction of emotional distress."). As to the second ground, "[l]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *McNatt*, 2026 WL 962396, at *8. And where the Court "has found that [Dannaoui] has failed to show that there is a genuine issue of material fact as to her . . . discrimination, harassment or retaliation claims," it follows that she "cannot show a genuine issue of material fact as to whether [HBF's] acts were extreme and outrageous" sufficient to support her IIED claim. *Gardner v. Wayne County*, 520 F. Supp. 2d 858, 869 (E.D. Mich. 2007).

Thus, summary judgment is warranted on Dannaoui's IIED claim.

**IV.**

For the reasons provided above, HBF's motion for summary judgment (ECF No. 12) is GRANTED. A separate judgment will issue.

IT IS SO ORDERED.

Dated: September 23, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE